All right, our second case for this morning is Deets v. Massman Construction Company. Mr. Sanye. May it please the court, my name is Uche Asone, and I'm here on behalf of the plaintiff, who is the appellant in this case, who is Terry Deets. The issue here is whether or not the plaintiff has presented sufficient evidence to get this case to the trial, to warrant a jury trial. Now, to state it differently, did the facts that he present, if taken as true, among reasonable inferences drawn in his favor, has he shown that there are genuine issues of material facts that preclude summary judgment? And we believe that he has. At the time of his layoff, he asked his supervisor, Mr. Todd, why am I being laid off? And to that question, Mr. Todd said that his minority numbers were not right. That was in response to the question, why am I being laid off? Now, the district court and the defendants assert that the comment was related to the hiring of Mr. Green or his reapplication for employment. Why would that have made any difference, actually? I'm a little baffled that the district court thought that a comment saying, I'm not taking Caucasians, you know, meant it was okay in one context but not in another. It seems a little strange. We have this, my minority numbers aren't right. I'm supposed to have 13.9% minorities and I've only got 8% and so on, fill in the blank. Not hiring you, laying you off, firing you, whatever. It seems to me any of those would be equally bad. Well, yes, Mr. Todd had an opportunity to answer the question however he saw fit. He could have said, look, I'm laying you off because there's no work. He could have said anything else, but he did not. At this point, the defendants nor the district court cannot now clarify those comments. At a minimum, the jury needs to make a decision as to what that comment relates to. Does it relate to the layoff or does it relate to rehiring or does it relate to Mr. Green? For summary judgment, the standard is that the plaintiff's version of the story has to be accepted and all inferences, reasonable inferences drawn in his favor. Here, the district court was required to draw an inference that Mr. Todd's comment, to whatever extent is unclear, relates to the decision to lay by client. It may well be that at trial, the jury will determine otherwise. But for summary judgment, the law requires that the judge draw all inferences in favor of the plaintiff. So do you think if the jury believes your client that Mr. Todd said this and it doesn't believe Mr. Todd, who apparently denies saying this, that it would have to return a verdict in favor of your client? I believe so, Your Honor. I believe so. Now, the parties have briefed this issue about all these comments, whether or not they were related to layoff, rehiring, Mr. Green. The mere fact that the two sides, the plaintiff is saying the comment relates to the layoff decision, defendant is claiming that it relates to the rehiring decision, and all the briefs are summarizing all those questions. I submit that that is the definition of genuinely sure material fact, because the dispute is material to the outcome of the case. Such a case could not be resolved in summary judgment. It has to go to the trial. The trial, the jury will look at the witnesses, hear my client, hear Mr. Todd, hear Jesse Green, maybe hear Mr. McKinnon and Jim Rozier, and make a decision as to what happened. In his affidavit, Mr. McKinnon uses the word terminate. Nowhere in the statement is there a reference to rehiring, or an application to rehiring. In fact, neither Mr. Todd nor McKinnon references rehiring at all, with respect to the termination, at the time of the event. So Mr. Dietz does continue to work initially quite a few hours on this project, and then it tapers off, I gather, and finally ends in December, is that correct? Yes, Your Honor. So I guess there's some question whether this was anything but just a remark that had no consequence. Well, it did have consequence because his hours dramatically dropped. We started the numbers in the brief because he was going to be taken away from the 40-hour-a-week schedule to a different schedule where he was filling in, so he did lose money as a result. Okay. I mean, you can save your time for rebuttal. You can use it now. It's up to you. Sure. With regard to the seniority rules, it's much like an at-will employment. You cannot discriminate against an at-will employee on the basis of his race, based on the fact that he's at-will or based on seniority. So Title VII and Section 1981 both trump seniority rules and at-will employment rules. So the whole issue of at-will versus seniority does not come into play with respect to the Title VII claim. Thank you so much. Okay. Thank you. Ms. Story. May it please the Court. My name is Julianne Story, and I'm here today on behalf of the appellees in this case. Summary judgment should be affirmed because appellant cannot show that he was laid off on July 17, 2012. Why doesn't McKinnon's declaration create a litigable issue? He says that the superintendent told him that he'd have to terminate Dietz's 40-hour minimum work week because there was an insufficient number of non-white workers. If a jury believed that, wouldn't that be very damaging to your company? One might think so. However, there are two very important facts in this case that appellant has not acknowledged. One of them is that he worked not at will, but he was subject to the collective bargaining agreement that covered his employment on the project. I don't understand how that may be inconsistent with this declaration by McKinnon, but how can that be resolved without a trial? Because at the time that appellant was laid off, he had no right to work on the project. But that's why Mr. Assagne was making an analogy to employees at will, who similarly have no right to an additional five minutes of a job. But what they do have a right to is the absence of racial discrimination. So even at will employees can say, you could have fired me because you didn't like my shoes, but you can't fire me because of my race. And that's been the law for a very long time. And so I don't think the collective bargaining agreement helps much. If you look at this statement, if you think, how would we react to somebody saying to a union, don't send any African-Americans over here because we need more Latinos or something, we would say that's just a complete violation of Title VII, not to mention probably a host of state laws and other things. That's what happens here. This guy's told not just that the unions are urged to have an open-door policy and to reach out into the community, get as many diverse members as possible, but they're told we don't want you because you're the wrong race. How can that be permissible? Under the collective bargaining agreement, the appellant had no seniority on the telegraph. It doesn't matter. What I'm trying to tell you is the collective bargaining agreement certainly governs seniority. What the collective bargaining agreement certainly does not do is give the employer the green light to discriminate on the basis of race. An appellant, Your Honor, was laid off for lack of work. That's what you say, but a jury may see the other, particularly because Mr. Green shows up instantly, there's a very poor case for lack of work, both because Mr. Green shows up instantly, and secondly, all you have to do is look at Mr. Dietz's career, and you can see that these guys are quite capable of working on a variety of cranes. There are at least three different kinds of cranes that Mr. Dietz apparently very comfortably moves from one to the other. So you can't say, well, he couldn't continue working on the tower crane because that guy came back and the Liebherr crane, however you pronounce the crane, he'd been off for two weeks. The fact is that there are various cranes on this work site. He works on all of them, and the collective bargaining agreement doesn't affect race discrimination. But at the time of his layoff, he had no seniority on the tower crane because the person he was filling in for was coming back to work. Yes, but he also had no seniority on the Liebherr crane, and the decision had already been made. And so if he had been told, so here's what you're not getting, if he had been told, you don't have seniority, you have to stand in line, that would be fine, but that's not what he was told. You get the difference? There's a distinction. I do understand the distinction. Our position is that regardless of what he was told, he had no right to work, and he can't prove that he had a right to work because of the seniority provisions. Excuse me? He was working, and the question is whether he was terminated because of his race. He was working in a fill-in position on the tower crane. What difference does it make? If he was dismissed because of his race, why isn't that discrimination? You seem hung up on the precise terms of his employment. The fact that there was a collective bargaining agreement with seniority provisions. But it doesn't matter. I don't understand you. Suppose you had a plumber, and you have a plumber, and he comes once in a while. He's not your employee at all, right? He's just a contractor. He comes, and you say to him one day, well, you know, my plumber, you're white, and my carpenter is white, and so on and so forth. And I think I should have a black contractor once in a while, so I'm not going to use you anymore. Now, wouldn't that be discrimination? In the hypothetical situation that you identified, it sounds like yes. What makes this situation different is the context of the construction work site, which is not like an office where a position exists all the time waiting to be built. But I wasn't talking about an office. I'm talking about someone who works part-time for you, no formal employment relationship, and you decide to terminate this person on racial grounds. And I don't see how that is different from this case. And I submit on behalf of your police that what distinguishes this situation from the situation that you're describing is the collective bargaining agreement and specifically the seniority provisions. Well, can a collective bargaining agreement endorse racial discrimination? No, it does not. But at the time of his layoff on July 17, for lack of work, he had no seniority on the tower crane, and that worker was returning to work. And on July 18, Green shows up to work on the ferry crane. I mean, a jury might believe your client's people that none of these offensive remarks were ever made. That would make this quite a different case. But that's not where we are. We're at summary judgment. We have to assume that he's told, I'm laying you off because you're not a minority, and we have to assume that the other guy, Rogeer, said, sorry to hear about this minority thing. We have to assume the McKinnon affidavit. And if we do, this is a decision to tell the person you're being laid off, as Judge Williams said, not because there's no work, not because we have to put you at the back of the line, but because you're white. And if we have to assume all of that, it sure looks like a situation covered by Title VII, for that matter, 1981. And I would submit to you that it is the collective bargaining agreement at the risk of sounding like a broken record. It certainly does sound like a broken record. And you can't give us any authority that suggests that we're wrong on this. Then the other thing that's going on in this case, you agree he was given short-term assignments, and so he lost money in this period after these comments were made, right? Because he was given short-term assignments. He was called back, Your Honor, when work was available. That is correct. And those were short-term assignments, so it was not a full-time situation. There's rarely full-time. I mean, Appellant concedes that there's no guarantee of any particular work assignment or any number of hours per week. What there is a guarantee is that those decisions will be made without race being the deciding factor. That is true, Your Honor. It's the problem. And I would raise for further consideration the fact that Appellant did complain to two different union officials regarding his July 17 layoff, and no grievance was filed by him or on behalf of Appellant by the union, which is further evidence that there was no breach of the collective bargaining agreement, which did have a non-discrimination provision. But that's not a requirement to file a Title VII case like he filed here, right? No, Your Honor, that is correct. That is correct. So I don't think that gets you anywhere. Your Honors, it is Appellee's position that the District Court's summary judgment in Appellee's favor was proper because Plaintiff Appellant did fail to present evidence either under the direct method or the indirect method of proof, and for that reason we ask that the District Court's decision be affirmed. Thank you for your attention. Thank you.  No, Your Honor. All right. Thank you very much then to both counsels. We'll take the case under advisement.